**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| PATRICK BAKER, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No.: |
| vs. | **CLASS ACTION COMPLAINT** |
| AGL RESOURCES, INC., SANDRA N. BANE, THOMAS D. BELL, JR., NORMAN R. BOBINS, CHARLES R. CRISP, BRENDA J. GAINES, ARTHUR E. JOHNSON, WYCK A. KNOX, JR., DENNIS M. LOVE, DEAN R. O'HARE, ARMANDO J. OLIVERA, JOHN E. RAU, JAMES A. RUBRIGHT, JOHN W. SOMERHALDER II, BETTINA M. WHYTE, HENRY C. WOLF, AMS CORP., and THE SOUTHERN COMPANY, | |
| Defendants. | |

Plaintiff, by his undersigned attorneys, for his Class Action Complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This is a shareholder class action brought by plaintiff on behalf of himself and the public shareholders of AGL Resources, Inc. ("AGL" or the "Company") against AGL, the directors of AGL, The Southern Company ("Southern") and Southern's affiliate, AMS Corp. ("Merger Sub"), arising out of their agreement to sell AGL to Southern (the "Proposed Transaction"). This action arises out of Defendants' material omissions and false and misleading statements in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder.

2.     On August 23, 2015, AGL entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which Southern will acquire AGL in a transaction valued at approximately $12 billion, after which AGL will merge into a Southern controlled entity. Under the terms of the Proposed Transaction, AGL shareholders will receive $66.00 in cash per AGL share (the "Offer Price"). The Proposed Transaction has been approved by AGL's Board of Directors (the "Board").

3.     The Company has articulated a "clear path" to future growth over the next five years and has consistently rewarded shareholders with a profitable

dividend.  With the announcement of the Proposed Transaction this all came to a screeching halt.  AGL shareholders are now being cashed out and will never see the growth (and profits) the Company promised were forthcoming.

4.     Defendants are seeking shareholder approval of the Proposed Transaction via a materially false and misleading Schedule 14A (the "Proxy") filed by the Company with the SEC on September 11, 2015.  As set forth herein, the Proxy omits and misrepresents material information about, among other things, the events leading up to the Board's approval of the Merger Agreement and the financial analysis performed by Goldman, Sachs, & Co. ("Goldman Sachs"), the Company's financial advisor.  These material facts must be disclosed in order for shareholders to make a fully-informed vote on the Proposed Transaction.

5.     The Proxy falls far short of providing the necessary details that would enable Plaintiff and other AGL shareholders to decide how to vote on the Proposed Transaction.  Plaintiff therefore seeks to enjoin the Proposed Transaction for Defendants' violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

**PARTIES**

6.     Plaintiff has been, at all times relevant hereto, an AGL shareholder.

3

7.     Defendant AGL is a Georgia corporation that maintains its principal executive offices at Ten Peachtree Place NE, Atlanta, Georgia 30309.   The Company's securities trade on the New York Stock Exchange under the symbol "GAS."   AGL is an energy services holding company whose primary business is the distribution of natural gas through its natural gas distribution utilities.

8.     Defendant Southern is a Delaware corporation that maintains its principal executive offices at 30 Ivan Allen Jr. Blvd, Atlanta, Georgia 30308. Southern operates companies that supply electric service in the states of Alabama, Georgia, Florida, and Mississippi.

9.     Defendant Merger Sub is a Georgia corporation and wholly-owned subsidiary of Southern.

10.     Defendant Sandra N. Bane ("Bane") has served as a Company director since 2008.

11.     Defendant Thomas D. Bell, Jr. ("Bell") has served as a Company director since 2004.

12.     Defendant Norman R. Bobins ("Bobins") has served as a Company director since 2011.

13.     Defendant Charles R. Crisp ("Crisp") has served as a Company director since 2003.

14.     Defendant Brenda J. Gaines ("Gaines") has served as a Company director since 2011.

15.     Defendant Arthur E. Johnson ("Johnson") has served as a Company director since 2002.

16.     Defendant Wyck A. Knox, Jr. ("Knox") has served as a Company director since 1998.

17.     Defendant Dennis M. Love ("Love") has served as a Company director since 1999.

18.     Defendant Dean R. O'Hare ("O'Hare") has served as a Company director since 2005.

19.     Defendant Armando J. Olivera ("Olivera") has served as a Company director since 2011.

20.     Defendant John E. Rau ("Rau") has served as a Company director since 2011.

21.     Defendant James A. Rubright ("Rubright") has served as a Company director since 2001.

22.     Defendant John W. Somerhalder II ("Somerhalder") has served as a Company director since 2006. Somerhalder is the Chairman of the Board and the Company's Chief Executive Officer.

23.     Defendant Bettina M. Whyte ("Whyte") has served as a Company director since 2004.

24.     Defendant Henry C. Wolf ("Wolf") has served as a Company director since 2004.

25.     The Defendants named above in paragraphs 10 through 24 are sometimes collectively referred to herein as the "Individual Defendants."

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act, 15 U.S.C. §78aa, because the claims asserted herein arise under sections 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §78j(b) and §78t(a). Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b).

27.     This Court has jurisdiction over each defendant named herein because each defendant is an individual, corporation or partnership which has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action on his own behalf and as a class action pursuant to Fed. R. Civ. P. 23, on behalf of all holders of Company stock who are being and will be harmed by defendants' actions described herein (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any defendants.

29.     This action is properly maintainable as a class action.

30.     The Class is so numerous that joinder of all members is impracticable. According to recent SEC filings, AGL has nearly 120 million shares of common stock outstanding, likely owned by thousands of shareholders.

31.     There are questions of law and fact that are common to the Class that predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following:

(a)     Whether the Proxy omits or misrepresents material facts about the Proposed Transaction;

(b)     Whether the Individual Defendants are control persons of AGL within the meaning of section 20(a) of the Exchange Act; and

(c)     Whether plaintiff and the other members of the Class would be irreparably harmed if the transactions complained of herein were consummated without first correcting the Proxy.

32.     Plaintiff's claims are typical of the claims of the other members of the Class, and plaintiff does not have any interests adverse to the Class.

33.     Plaintiff is an adequate representative of the Class in that he has no interests antagonistic to the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

34.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the Defendants.

35.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FACTUAL ALLEGATIONS

**<u>Background of the Company and Recent Performance</u>**

36.     According to its public filings, AGL is an energy services holding company with its primary business being the distribution of natural gas through its natural gas distribution utilities.

37.     The Company operates in four segments: "Distribution Operations," "Retail Operations," "Wholesale Services," and "Midstream Operations."

38.     The Company's Distribution Operations serves 4.5 million customers across 7 states.  It also covers the operation, construction, and maintenance of 80,700 miles of natural gas pipeline and 14 storage facilities to provide safe and cost-effective service of natural gas to residential, commercial and industrial customers.  The Company's Retail Operations segment serves 628,000 energy customers and 1.2 million service contracts across 15 states and includes natural gas commodity and related services to customers in competitive markets or markets that provide for customer choice.  The Wholesale Services Segment serves a variety of customers in the natural gas value chain with operations structured to

9

optimize storage and transportation portfolios under a wide range of market conditions through the use of hedging tools that allow for the capture of additional value while limiting risk. The Midstream Operations segment consists primarily of high deliverability natural gas storage facilities and select pipelines, enabling the provision of diverse sources of natural gas supplies to its customers.

39.    In a presentation at the Company's March 25, 2015 Analyst Day (the "2015 Analyst Day Presentation"), the Company articulated its "clear path" to deliver future growth over the next five years, which included growth through investment and consistent increases in the retail segment:



40.     Shareholders of AGL Resources have enjoyed a consistent dividend as part of their investment.  As the Company illustrated during the 2015 Analyst Day Presentation, the dividend has been increasing for thirteen consecutive years:



41.    On April 28, 2015 the Company announced financial results for the first quarter of 2015.  The results included an increase in income from continuing operations (excluding the wholesale segment) over the previous quarter.  In the Company's April 28, 2015 press release, Individual Defendant Somerhalder noted:

"Our first-quarter performance supports our strategy of generating a predictable, attractive earnings stream for our shareholders," said John W. Somerhalder II, AGL Resources' Chairman, President and Chief Executive Officer. "We continue to invest in utility projects that drive rate base growth with minimal regulatory lag, as well as interstate pipeline projects supported by long-term contracts. As we execute on these plans and effectively manage our complementary portfolio of

assets, we expect to generate long-term average annual EPS growth of 6% to 9% through 2019."

42.     The market responded favorably to these results.   Analysts from Barclays Equity Research published a research report following the Company's announce of the first quarter earnings, notably examining the Company's current investments in hope of future gains:

> Earlier this month AGL filed a petition with the Florida Commission for approval of a new infrastructure investment program. The petition calls for annual spending of $10 million over a 10-year period, with costs incurred under the program being recovered through a rate rider with annual adjustments and true-ups. Management expects a ruling by year end. If approved, the spending would provide a modest level of upside to AGL's current 5-year EPS forecast.

43.     On July 25, 2015 the Company announced financial results for the second quarter of 2015.  The results again included an increase in income from continuing operations (excluding the wholesale segment) over the previous quarter. In the Company's July 25, 2015 press release, Individual Defendant Somerhalder noted:

> "Our second quarter performance was seasonally quiet, with results from all segments performing in line with, or better than, management's projections. Even with warmer-than-normal temperatures during the quarter, we reported solid operating income for our distribution and retail segments, while continuing to maintain a strong focus on expense management. While EBIT for our wholesale services segment was lower than last year's second quarter, performance exceeded our expectations based on economic results," said John W. Somerhalder II, AGL Resources' Chairman and Chief

13

Executive Officer. "Building on a strong first half of the year, we remain on track to achieve consolidated EPS in 2015 of $2.85 - $3.10, and $2.70 - $2.80 excluding wholesale services. With our continued focus on investment in utility projects that drive rate base growth, as well as our investments in interstate pipeline projects, **we expect to generate long-term average annual EPS growth of 6% to 9% through 2019**."

(emphasis added).

44.    As part of the Company's second quarter 2015 results, AGL released a presentation outlining the Company's future financial prospects.   The presentation included details surrounding three pipeline investments set to begin operations in 2017 and 2018:



45.     It is clear that AGL, along with an ever-increasing dividend, has positioned itself for future growth.

**The Sales Process**

46.     On February 23, 2015, Thomas A. Fanning ("Fanning"), the Chairman, President, and Chief Executive Officer of Southern contacted Somerhalder and conveyed Southern's interest in a possible transaction.  Though no specific terms were discussed, Somerhalder agreed to communicate the expression of interest to the Board.

47.     The Board, along with representatives of Goldman Sachs, discussed Somerhalder's conversation with Fanning on March 6, 2015.  Somerhalder also reported at the March 6, 2015 Board meeting that the CEO of a Company referred to in the Proxy only as Company B, had requested a meeting with Somerhalder the next month.  Absent specific details, the Board determined to maintain its current stand-alone business plan.

48.     Somerhalder and Fanning would meet on April 10, 2015.  Fanning indicated that Southern was prepared to acquire AGL in an all-cash transaction at a premium Fanning indicated would be 20% above the then-current trading price of AGL stock.

49.     Later the same day, Somerhalder was contacted by the CEO of Party B, who indicated that Company B was interested in acquiring AGL, at an implied premium of 21-25%, for a combination of cash and stock.

50.     Somerhalder would relay these conversations to the Board over two weeks later on April 28, 2015.  At the meeting, the Board determined that it was not in the Company's best interests to pursue a transaction with either Southern or Company B and the Company's strongest prospect was to remain as a stand-alone entity.

51.    Somerhalder would communicate the Board's decision to both Fanning and the CEO of Company B.

52.    On June 11, 2015 the CEO of a company referred to in the Proxy as Company C met with Somerhalder and expressed interest in a strategic transaction between Party C and the Company. No specific terms were discussed.

53.    The CEO of Party C would send a letter to Somerhalder on June 16, 2015 which indicated that Party C was prepared to acquire AGL in an all-stock transaction at a price which would offer shareholders of the Company a 23% premium to the current trading price of AGL stock.

54.    At Fanning's request, Rubright and Fanning would meet on June 19, 2015.  Fanning would reiterate Southern's interest in acquiring AGL but did not change any of the previously proposed economic terms.

55.    Somerhalder would be contacted by the CEO of a company referred to in the Proxy as Party D on June 22, 2015.  The CEO of Party D did not offer any specific transaction terms.

56.    On June 25, 2015, the Board would meet to consider all the outstanding proposals.  At the close of the meeting, the Board again concluded that the Company should not engage any of the bidders and that the Company's stand-

alone plan offered more value to shareholders than any of the proposed transactions.

57.     Somerhalder would relay the Board's determination to Party C in a letter on June 29, 2015.  The same day, Somerhalder told Party D that absent specific proposed acquisition terms, the Company remained steadfast in its pursuit of its stand-alone plan.

58.     Party C would respond via letter on July 20, 2015, reiterating its interest to acquire AGL but without modifying the terms of its initial indication of interest.

59.     Rubright and Fanning would meet again on July 26, 2015.  At the meeting, Fanning delivered a letter on behalf of Southern which stated that Southern was prepared to acquire AGL for $66 per share in cash and would seek to negotiate a transaction within three weeks. The letter also stated that AGL's current senior management team would have a meaningful role in realizing the Company's business plan post-transaction.

60.     Rubright delivered the Southern letter to the Board at a July 28, 2015 meeting.  At the meeting, the Board concluded that Party C would be unable to match Southern's offer and that the Company should not threaten a potential transaction with Southern by continuing to negotiate with Party C.  At the July 28,

2015 meeting the Board also appointed Rubright in charge of day-to-day negotiations with Southern.

61.     On July 31, 2015 Somerhalder contacted Fanning and told the Southern CEO that AGL would proceed with the proposed three-week timetable for the transaction.

62.     Somerhalder and Rubright, at the Board's direction, would send a joint letter to the CEO of Party C informing Party C that Party C's proposal was not compelling and that engaging in discussions with Party C was not in the best interests of the Company or its shareholders.

63.     Without any further negotiation on price, AGL and Southern would meet their three week timetable and execute the Merger Agreement on August 23, 2015.

**The Proposed Transaction**

64.     Despite the Company's clear vision for future growth and strong predictions for 2016, AGL issued a press release announcing the Proposed Transaction just one month after its most recent earnings announcement.  The August 24, 2015 press release stated in pertinent part:

> ATLANTA, Aug. 24, 2015 – Southern Company (NYSE:SO) and
> AGL Resources (NYSE: GAS) today announced that the boards of

directors of both companies have approved a definitive merger agreement to create America's leading U.S. electric and gas utility company. Pursuant to the agreement, AGL Resources will become a new wholly owned subsidiary of Southern Company in a transaction with an enterprise value of approximately $12 billion, including a total equity value of approximately $8 billion.

For Southern Company, this transaction is anticipated to:

· Be accretive to earnings per share (EPS) in the first full year following the close of the transaction;

· Accelerate expected long-term EPS growth to 4-5 percent;

· Preserve its strong financial profile and further support investment in the company's diversified energy platform; and

· Enhance the ability to increase the growth rate of its dividend, subject to board of directors' approval.

Under the terms of the agreement, AGL Resources' shareholders will be entitled to receive $66 in cash for each share of AGL Resources common stock.

This represents a premium of 36.3 percent to the volume-weighted average stock price of AGL Resources over the last 20 trading days ended Aug. 21, 2015.

When completed, the combination will better position the companies to provide necessary natural gas infrastructure to meet customers' growing energy needs, and will create the second-largest utility company in the U.S. by customer base with:

· Eleven regulated electric and natural gas distribution companies providing service to approximately nine million customers with a projected regulated rate base of approximately $50 billion;

· Operations of nearly 200,000 miles of electric transmission and distribution lines and more than 80,000 miles of gas pipelines; and

· Generating capacity of approximately 46,000 megawatts.

"As America's leader in developing the full portfolio of energy resources, we believe the addition of AGL Resources to our business will better position Southern Company to play offense in supporting America's energy future through additional natural gas infrastructure," said Southern Company Chairman, President and CEO Thomas A. Fanning. "For some time we have expressed our desire to explore opportunities to participate in natural gas infrastructure development. With AGL Resources' experienced team operating premier natural gas utilities and their investments in several major infrastructure projects, this is a natural fit for both companies.

Moreover, this transaction is expected to position Southern Company to enhance earnings growth while maintaining a strong balance sheet and improving cost-effectiveness."

"We believe this combination will also advance our customer-focused business model. AGL Resources and Southern Company have long been leading corporate citizens and the combined company will further our support of all of the communities we serve," Fanning added.

The Southern Company system is known for regularly outperforming industry peers in reliability, with prices below the national average and the highest customer satisfaction among peer utilities as measured by the Customer Value Benchmark survey.

"AGL Resources' management team and board of directors wholeheartedly support this transaction, and we believe it will provide new opportunities and enhanced value for our shareholders, customers and employees. The purchase price is reflective of the strong platform for growth that we have diligently cultivated over the past several years, and accelerates value recognition for these efforts," said AGL Resources Chairman and CEO John W. Somerhalder, II.

Somerhalder also said, "Importantly, both companies are committed to safely delivering clean, reliable, affordable energy while providing

customers with world-class service. The respective models of Southern Company and AGL Resources focus on the fundamental values of safety, operational excellence and environmental stewardship.

"We've found a strong partner in Southern Company with its complementary businesses, excellent reputation and shared values. They have committed to continuing our tradition of community and philanthropic support and exceptional service to customers. We look forward to working with Southern Company to complete the transaction as expeditiously as possible and ensure a smooth transition."

**Benefits of Transaction**

· For investors it will create a unique platform that is well-positioned to compete for growth across the energy value chain;

· For customers it will strengthen reliability and improve current and future energy infrastructure development; and

· For communities it will provide for the expansion of the companies' customer-focused business models.

For more information about how this agreement creates America's leading energy company, visit www.doingenergybetter.com.

**Structure and Organization**

After closing, AGL Resources will continue to maintain its own management team and board of directors, and, as is the case with Southern Company's other operating subsidiaries, AGL Resources will continue to maintain its own corporate headquarters, which for AGL Resources is in Atlanta. Customers will continue to be served by their current gas and electric utility companies.

Until the transaction has received all necessary approvals and has closed, the companies will continue to operate as separate entities.

**Financing**

Southern Company has committed financing from Citigroup Global Markets Inc. and plans to put long-term financing in place prior to the closing of the transaction.

**Approvals and Timing**

Completion of the transaction is conditioned upon, among other things, the approval of the AGL Resources shareholders and certain state utility and other regulatory commissions. The transaction is also subject to the notification and clearance and reporting requirements under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. The companies expect to complete the transaction in the second half of 2016.

Citigroup Global Markets Inc. is serving as the exclusive financial advisor and Jones Day, Gibson Dunn & Crutcher LLP and Troutman Sanders LLP are serving as legal counsel to Southern Company. Goldman, Sachs & Co. is serving as the exclusive financial advisor and Cravath, Swaine & Moore LLP is serving as legal counsel to AGL Resources.

65.    Defendants are withholding material information about the Proposed Transaction from the Company's public shareholders.   The Proxy, which recommends that AGL shareholders vote in favor of the Proposed Transaction, contains numerous material omissions and misstatements in violation of Defendants' disclosure obligations.

66.    The Proxy fails to disclose material information pertaining to the events that led up to the Board's approval of the Proposed Transaction, including but not limited to:

(a)    the amount of compensation received by Goldman Sachs for the prior work it has done for Southern and its affiliates over the past two years;

(b)    the Board's rationale for not further engaging with Party B or Party D after Southern's $66 per share offer was made;

(c)    why Somerhalder was not placed in charge of the Company's negotiations with Southern;

(d)    the rationale for the Board's conclusion that Party C would be unable to match Southern's $66.00 per share offer; and

(e)    the unlevered free cash flows for 2015E through 2019E in the Company's Prospective Financial Information.

67.    The Proxy also fails to disclose certain key data, inputs, and assumptions underlying the financial analyses supporting the fairness opinion of the Board's financial advisor, Goldman Sachs, including:

(a)    With respect to Goldman Sachs' *Selected Companies Analysis*, the Proxy should disclose: (i) the Adjusted Enterprise Value ("EV") as a multiple of 2015 estimated EBITDA for each selected company; (ii) the Adjusted EV as a

multiple of 2016 estimated EBITDA for each selected company; (iii) the implied price to estimated earnings ratios (the "P/E Ratio") for 2015 for each selected company; and (iv) the P/E Ratio for 2016 for each selected company.

(b)     In regards to Goldman Sachs' *Selected Transaction Analysis* the Proxy should disclose: (i) the Purchase Price as a multiple of first full year fiscal year period beginning in the year the transaction was announced for each selected transaction; (ii) the Premiums Paid multiple for each selected transaction; (iii) the total Purchase Price for each selected transaction; and (iv) the type of consideration (e.g. cash, stock, mixed) used in each selected transaction.

(c)     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy should disclose: (i) the inputs and assumptions underlying the selection of a discount rate range of 4.25% to 5.25%; and (ii) the inputs and assumptions underlying the selection of exit multiples of 8.0x to 10.0x.

68.     Until these material disclosure failures are corrected, Plaintiff and the other AGL shareholders do not have sufficient information to cast a fully-informed vote on the Proposed Transaction.  Defendants will consummate the Proposed Transaction to the irreparable harm of the Class unless enjoined by this Court.

69.     Plaintiff and the other members of the Class have no adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
**Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9
Against All Defendants**

70.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

71.    The Company and its Board disseminated the false and materially misleading Proxy, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

72.    The Proxy was prepared, reviewed, and/or disseminated by the Board and AGL. It misrepresented and/or omitted material facts, including material information about the actual intrinsic value of the Company.

73.    The Company and its Board knew or should have known that the Proxy was being filed with these omissions and false and materially misleading statements included therein.

74.    The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view full and accurate disclosures as significantly altering the "total

mix" of information made available in the Proxy and other information reasonably available to investors.

75.    By reason of the foregoing, AGL and the members of its Board have violated section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

76.    As a result of the false and materially misleading Proxy, Plaintiff and the other members of the Class are threatened with irreparable harm, rendering money damages inadequate.

77.    Injunctive relief is therefore appropriate to ensure the Proposed Transaction does not proceed until the false and misleading Proxy is amended and the Exchange Act violations are corrected.  In the event that the transaction is consummated prior to the entry of this Court's final judgment, Plaintiff will seek rescissory damages.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

78.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79.    The Individual Defendants acted as controlling persons of AGL within the meaning of section 20(a) of the Exchange Act as alleged herein. By

virtue of their positions as officers and/or directors of the Company, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false and misleading statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading statements in the Proxy.

80.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and the other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

81.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the Board's unanimous recommendation  to approve the Proposed Transaction. The Individual Defendants were, thus, directly involved in the making of the Proxy.

82.     In addition, as the Proxy sets forth at length, and as described herein, the Board members were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered, descriptions of which had input from the Board.

83.     As set forth above, the Individual Defendants had the ability to exercise control over, and did control, a person or persons who violated section 14(a) of the Exchange Act and SEC Rule 14a-9 by their acts and omissions in connection with the false and materially misleading Proxy.

84.     By virtue of these facts, the Individual Defendants have violated section 20(a) of the Exchange Act and are liable to plaintiff and the other members of the Class.

## **PRAYER FOR RELIEF**

**WHERFORE,** Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and in favor of the Class and against all Defendants as follows:

A.     enjoining, preliminarily and permanently, the Proposed Transaction unless and until defendants fully comply with Section 14(a) of the Exchange Act and SEC Rule 14a-9;

B.     in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

C.     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

D.     granting Plaintiff and the other members of the putative Class such further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 16, 2015

Respectfully submitted,

**LAW OFFICES OF DAVID A. BAIN, LLC**

*/s/ David A. Bain*

DAVID A. BAIN
Georgia Bar No. 032449
1050 Promenade II
1230 Peachtree Street, NE
Atlanta, GA 30309
Tel: (404) 724-9990
Fax: (404) 724-9986
dbain@bain-law.com

**THE WEISER LAW FIRM, P.C.**
JAMES M. FICARO
22 Cassatt Ave
Berwyn, PA 19312
(610) 225-2677

**RYAN & MANISKAS, LLP**
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
(484) 588-5516

*Counsel for Plaintiff*

## CERTIFICATION

I, Patrick Baker, ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed a complaint filed in this matter and adopts its allegations.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in any private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon this Plaintiff Certification.

4.      Plaintiff's purchase and sale transaction(s) in the securities of AGL Resources, Inc. (NYSE: GAS) that are the subject of this action during the Class Period is/are as follows:

| Security | Transaction | # of Shares | Date | Purchase Price |
|---|---|---|---|---|
| AGL | PURCHASE | 358 | 12/20/2011 | $41.79 |
| | | | | |
| | | | | |
| | | | | |

5.      Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within a three-year period prior to the date of his Certification except as detailed below:

7.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 15 day of September, 2015.

Patrick Baker